69 So.3d 325 (2011)
M.H., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 1D11-0572.
District Court of Appeal of Florida, First District.
August 31, 2011.
*326 Nancy A. Daniels, Public Defender, and Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for Appellant.
Pamela Jo Bondi, Attorney General, and Therese A. Savona, Assistant Attorney General, Tallahassee, for Appellee.
WOLF, J.
M.H. asserts that the trial court erred in deviating from the Department of Juvenile Justice's (DJJ) recommendation of probation. We agree and reverse.
Appellant pled guilty to possession with intent to sell, manufacture, or deliver a controlled substance and possession of less than 20 grams of marijuana. The charges were based on appellant's attempt to sell marijuana to an undercover police officer on November 20, 2010.
Appellant had two previous arrests for possession of marijuana, one in February 2010 and one in June 2010. He was placed on probation for both offenses on July 28, 2010, and reoffended on November 3, 2010. Appellant was still on probation for one of the prior charges at the time of his arrest on the instant charges.
Prior to sentencing, the DJJ issued a predisposition report (PDR). The PDR listed both previous arrests, but mentioned only one in the recommendation section. The PDR recommended probation and substance abuse education but did not discuss the timing of the prior arrests or provide any reason why probation would be any more effective in the present case than it had been in the previous cases. The trial court rejected the recommendation for probation and placed appellant in a moderate-risk facility.
Section 985.433(7)(b), Florida Statutes (2010), governs the extent to which a trial court may deviate from the DJJ's recommendation in a PDR and provides in pertinent part:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court's findings resulting in a modified level of restrictiveness under this paragraph.
In E.A.R. v. State, 4 So.3d 614, 638 (Fla. 2009), the supreme court elucidated on the steps a trial court must take prior to deviating from a DJJ recommendation stating:
The only rational or logical means through which the juvenile court may provide "reasons" that explain, support, and justify why one restrictiveness level is more appropriate than another-and thereby rationalize a departure disposition-is for the court to:
(1) Articulate an understanding of the respective characteristics of the opposing *327 restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential "lengths of stay" associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile-in the least restrictive setting-and maintaining the ability of the State to protect the public from further acts of delinquency.
In addition to the foregoing, the trial court's stated explanation must provide a legally acceptable reason for "disregarding" the DJJ's assessment and PDR by "identifying significant information that the DJJ has overlooked, failed sufficiently consider, or misconstrued with regard to the child's programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public." Id. at 634.
E.A.R. sends several clear messages:
1. Trial courts must seriously consider what they are doing before deviating from DJJ recommendations;
2. There are certain specific things that must be considered prior to deviation; and
3. The face of the deviation order must demonstrate that the trial court fully considered the required prongs of E.A.R., and the appellate court will not be able to fill in the blanks of a deficient order.
Here, the trial court deviated from the recommendation for probation and placed the juvenile in a moderate risk facility. In deviating, the trial court stated:
the recommendation did not consider the child's history of delinquent behavior. The child would benefit from a structured program for his drug use and histhe child's behavior demonstrates no respect for authority or the law. Continued probation would not be in his best interest in that the child is essentially a drug dealer.
One might argue that the trial court's observations and conclusions were reasonable in light of appellant's committing a new drug offense within four months of being put on probation for two prior drug offenses. Further, the trial court was correct that the DJJ had failed to expressly consider the child's prior history of delinquent behavior. Specifically, while the PDR listed two prior drug offenses, only one prior offense was mentioned in the recommendation section, and there was no discussion concerning the prior arrests or any indication of how the prior arrests and probations would indicate that appellant was amenable to probation in the immediate case. "Consider" is defined as "to look at carefully, examine." Webster's New World Dictionary 297 (3d College ed. 1988). The mere mention of the prior disposition without anything more does not in any way indicate that the DJJ carefully looked at, or examined, the prior convictions. However, the written reason for deviation merely stated the PDR "failed to consider the child's delinquent history" without calling specific attention to where the report was deficient. Based on the dictates of E.A.R., this lack of specificity by the trial court cannot support affirmance. Had the trial court's written reasons for deviating articulated this deficiency rather than merely making a conclusory statement that the recommendation failed to consider the child's history, it may have withstood appellate review.
*328 Regardless of the foregoing, reversal would likewise be required pursuant to the second prong of E.A.R. As noted in E.A.R., in deviating, a trial court must articulate "an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) ... the divergent treatment programs and services available to the juvenile at these levels." E.A.R., 4 So.3d at 638 (emphasis added). Here, the trial court implied that the moderate-risk facility would offer the child a "structured" drug program. However, nothing in section 985.03(44)(c), Florida Statutes, states that all moderate-risk facilities have drug treatment programs as suggested by the trial court. While a trial court, working routinely with juveniles, may have insight into the types of programs provided at certain juvenile detention facilities, E.A.R. requires a trial court place that knowledge on record if the judge intends to rely on these types of findings to support deviations. The trial court's stated reason generally suggested appellant would benefit from a structured drug program but did not articulate an understanding that the moderate-risk facility would provide this program, as required by E.A.R.
Last, even if the trial court had provided sufficient reasons and properly considered the type of drug programs available in moderate-risk facilities, the trial court reversibly erred by failing to state the deviation and placement in a moderate-risk facility was the least-restrictive setting necessary to protect the public from recidivism, while balancing the need for rehabilitation. E.A.R., 4 So.3d at 638. In the underlying case, the PDR and the DJJ officer's testimony established appellant would be placed in a drug treatment program while on probation and the trial court did not state why this type of treatment was inadequate under the circumstances. The underlying offenses for sale and possession of marijuana are not violent crimes which dictate a heightened need to protect the public, but even if they were, the trial court never stated appellant posed any threat to society.
In conclusion, it is important for trial courts to understand that deviating from a DJJ's recommendation is a difficult matter pursuant to the dictates of E.A.R. In order to deviate lawfully, a trial court must do more than place generalized reasons on the record; it must engage in a well-reasoned and complete analysis of the PDR and the type of facility to which the trial court intends to send the child. This is no easy task and will take time and consideration.
However, when reversing the type of error that occurred, this court has allowed the trial court an opportunity to amend the disposition order to add the necessary information. See C.M.H. v. State, 25 So.3d 678 (Fla. 1st DCA 2010). Specifically, in C.M.H., a case similar to the underlying one, this court reversed the trial court's deviation from DJJ's recommendation of probation finding C.M.H. posed a threat to the public and required incarceration. In reversing, this court stated in relevant part:
The trial court did not engage in the appropriate analysis of determining why this disposition was better suited to serving the rehabilitative needs of C.M.H., in the least restrictive setting, and protecting the public from further acts of delinquency. See also Dep't of Juvenile Justice v. K.B., 784 So.2d 556, 557 (Fla. 1st DCA 2001). Accordingly, we reverse and remand to provide the trial court an opportunity to enter an order in compliance with E.A.R., or, if the trial court cannot, impose the probation recommended by the DJJ. See M.K. v. State, 4 So.3d 1271 (Fla. 1st DCA *329 2009) (reversing and remanding to provide trial court an opportunity to enter an order in compliance with E.A.R. where trial court failed to conduct proper analysis in departing from the DJJ's recommendation); M.J.S. v. State, 6 So.3d 1268 (Fla. 1st DCA 2009) (same).
Id. at 680.
Based on C.M.H., we reverse and remand so that the trial court may place more specific findings in the disposition order, or in the alternative, if those findings cannot be made, enter a new order placing appellant on probation.
LEWIS and RAY, JJ., concur.